**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARION DUNCAN and AARON )
WILLIAMS, as individuals, )
)
        Plaintiffs, )
)
    v. )
)
THE CITY OF NORTH CHICAGO, a )
Municipal Corporation, ELISHA IRVIN, JR., )
Chief of Police of the North Chicago Police )
Department, and MELVIN BROWN, )
RANDALL PRICE, MARK RUMMEL, )
KURTIS NASH, GLEN FORD, BRIAN )
AMILCAR, CASIMIR RINCON, )
NAZARRIO VILLASENOR, and GERARD )
WADE, all as individuals and in their official )
capacity as North Chicago Police officers, )
)
        Defendants. )

**00C 2293**

NO. _____

**DOCKETED**

(Circuit Court of the Nineteenth
Judicial Circuit, Lake County, Illinois APR 1 4 2000
Case. No. 00 L 110)

**JUDGE LEINENWEBER**

**MAGISTRATE JUDGE ROSEMOND**

## JOINT NOTICE OF REMOVAL

      Defendants, the City of North Chicago, Elisha Irvin, Jr., Melvin Brown, Randall

Price, Mark Rummel, Kurtis Nash, Glen Ford, Brian Amilcar, Casimir Rincon, Nazarrio Villasenor,

and Gerard Wade, by their attorneys, hereby file this Notice of Removal of the above-captioned

action from the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, where the

action is now pending, to the United States District Court for the Northern District of Illinois as

provided by 28 U.S.C. § § 1441 and 1446.  In support of this Notice, Defendants state:

          1.    On February 3, 2000, plaintiffs initiated this action by filing a complaint, Case

No. 00 L 110, in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois.  In that

complaint, plaintiffs seek damages for an alleged violation of their rights under 42 U.S.C. § 1983

and for alleged battery.  Plaintiffs served the complaint on all the Defendants on March 14, 2000.

2.    The above-described action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1331, and is one which may be removed to the Court by Defendants pursuant to 28 U.S.C. § 1441 because it is a civil action founded on a claim or right arising under the laws of the United States.

3.    This Notice of Removal is filed within 30 days of Defendants' receipt of formal service of the complaint, and is therefore timely filed pursuant to 28 U.S.C. § 1446(b). *See Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322 (1999).

4.    All named Defendants consent to this Notice of Removal.

5.    Pursuant to 28 U.S.C. § 1446(a), Defendants attach hereto as Exhibit 1 a copy of the complaint in this action. No other process, pleadings, or orders have been served upon or delivered to Defendants.

6.    Written notice of the filing of this Notice of Removal will be given promptly to all adverse parties, and a copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of the Nineteenth Judicial Circuit, Lake County, as required by 28 U.S.C. § 1446.

7.    By filing this Notice of Removal, Defendants do not waive any defense that may be available to them.

**WHEREFORE**, the City of North Chicago, Elisha Irvin, Jr., Melvin Brown, Randall Price, Mark Rummel, Kurtis Nash, Glen Ford, Brian Amilcar, Casimir Rincon, Nazarrio Villasenor, and Gerard Wade respectfully remove this case to the United States District Court for the Northern District of Illinois.

RESPECTFULLY SUBMITTED,

THE CITY OF NORTH CHICAGO and
ELISHA IRVIN, JR.

By: _____
    One of their attorneys

Steven M. Puiszis
Robert Shannon
HINSHAW & CULBERTSON
222 N. LaSalle Street Suite 300
Chicago, Illinois 60601
(312) 704-3000

MELVIN BROWN, RANDALL PRICE,
MARK RUMMEL, KURTIS NASH, GLEN
FORD, BRIAN AMILCAR, CASIMIR
RINCON, NAZARRIO VILLASENOR, and
GERARD WADE

By: _____
    One of their attorneys

Jeffrey D. Colman
Deborah R. Alexander
JENNER & BLOCK
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

Dated: April 13, 2000

437742

# EXHIBIT 1

STATE OF ILLINOIS )
                 ) SS
COUNTY OF LAKE )

NOTICE
BY LOCAL RULE 3.12
THIS CASE IS HEREBY SET FOR A SCHEDULING
CONFERENCE IN COURTROOM C320 ON 6-15
20 ~~o~~, AT 9 A.M/P.M. FAILURE TO APPEAR MAY RESULT
IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT
BEING ENTERED.

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

| | |
|---|---|
| MARION DUNCAN and AARON WILLIAMS, as individuals, | ) ) ) |
| Plaintiffs, | ) ) ) |
| Vs. | ) ) GEN. NO. 00 L 11 |
| THE CITY OF NORTH CHICAGO, A Municipal Corporation, ELISHA IRVIN, JR., Chief of Police of the North Chicago Police Department, and MELVIN BROWN, RANDALL PRICE, MARK RUMMEL, KURTIS NASH, GLEN FORD, BRIAN AMILCAR, CASIMIR RINCON, NAZARRIO VILLASENOR, and GERARD WADE, all as individuals and in their official capacity as North Chicago Police officers, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

FILED FEB 0 3 2000

## COMPLAINT AT LAW

NOW COME the PLAINTIFFS, MARION DUNCAN and AARON WILLIAMS, by and

through their attorneys, MORRISON AND MORRISON P.C., and in support of their

complaint at law against THE CITY OF NORTH CHICAGO, A Municipal Corporation,

ELISHA IRVIN, Chief of Police of the North Chicago Police Department, MELVIN BROWN,

RANDALL PRICE, MARK RUMMEL, KURTIS NASH, GLEN FORD, BRIAN AMILCAR,

CASIMIR RINCON, NAZARRIO VILLASENOR, and GERARD WADE, as individuals and

in their official capacity as North Chicago Police officers, state as follows:

## COUNT I - MARION DUNCAN V. MELVIN BROWN

## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Marion Duncan is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Melvin Brown is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4. Each and all of the acts of defendant Melvin Brown alleged herein were done by defendant Melvin Brown, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5. On or about May 23, 1999, at approximately 10:15 p.m., plaintiff Marion Duncan was lawfully operating a 1988 red Buick Regal, traveling northbound on Grove street, in the City of North Chicago, Illinois.

6. At approximately the same date, time, and location, defendant Melvin Brown , pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police vehicle owned and maintained by the City of

2

North Chicago for the use and benefit of the North Chicago Police Department.

7.  Defendant Brown then signaled plaintiff Duncan to stop his vehicle by activating his overhead lights, which plaintiff did in the 2000 block of Grove, in response to the evident authority of defendant Brown.

8.  Plaintiff Duncan, after pulling his vehicle to the side of the road, began to exit his vehicle.

9.  Defendant Brown, who at all times was wearing official uniform, insignia, and badge of the North Chicago Police Department, commanded Mr. Duncan to return to his vehicle.

10.  Plaintiff Duncan immediately complied with this request and sat in the front seat of his vehicle.

11.  Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

12.  Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene, and while Mr. Duncan was on the ground, he was repeatedly struck in the head, face and back area by Officer Brown and the other officers on the scene.

13.  Mr. Duncan was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

14.  Neither defendant Brown nor the other officers ever informed Mr. Duncan why he was being detained.

3

15. Defendant Melvin Brown did not have an arrest warrant for Mr. Duncan, did not have probable cause or a reasonable suspicion to believe that Mr. Duncan had committed, was committing or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Duncan.

16. The aforesaid force used by Officer Brown was excessive and unreasonable under the circumstances.

17. As a direct and proximate result of the excessive and unreasonable force used by defendant Melvin Brown, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

18. As a direct and proximate result of the excessive and unreasonable force used by defendant Melvin Brown, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

19. The conduct of the defendant Melvin Brown deprived plaintiff Duncan of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to

4

the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

20. The acts, conduct, and behavior of defendant Melvin Brown were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Melvin Brown, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT II - MARION DUNCAN V. MELVIN BROWN

### (BATTERY)

1. Plaintiff Marion Duncan is a resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Melvin Brown is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. On or about May 23, 1999, at approximately 10:15 p.m., plaintiff Marion Duncan was lawfully operating a 1988 red Buick Regal, traveling northbound on Grove street, in the City of North Chicago, Illinois.

5

4. At approximately the same date, time, and location, defendant Melvin Brown, pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

5. Defendant Brown then signaled plaintiff Duncan to stop his vehicle by activating his overhead lights, which plaintiff did in the 2000 block of Grove, in response to the evident authority of defendant Brown.

6. Plaintiff Duncan, after pulling his vehicle to the side of the road, began to exit his vehicle.

7. Defendant Brown, who at all times was wearing official uniform, insignia, and badge of the North Chicago Police Department, commanded Mr. Duncan to return to his vehicle.

8. Plaintiff Duncan immediately complied with this request and sat in the front seat of his vehicle.

9. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

10. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene.

11. While Mr. Duncan was on the ground, Officer Melvin Brown, without lawful justification and against the will of Marion Duncan, intentionally struck Mr. Duncan in the head, face and body area.

12. The aforesaid force used by Officer Brown was excessive and unreasonable under the circumstances.

18. As a direct and proximate result of foregoing unlawful physical contact used by defendant Melvin Brown, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

19. As a direct and proximate result of the foregoing unlawful physical contact used by defendant Melvin Brown, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

20. The acts, conduct, and behavior of defendant Melvin Brown were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Melvin Brown, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT III - MARION DUNCAN V. RANDALL PRICE

## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Marion Duncan is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

7

2.  Defendant Randall Price is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3.  This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4.  Each and all of the acts of defendant Randall Price alleged herein were done by defendant Randall Price, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5.  On or about May 23, 1999, defendant Melvin Brown, in relation to his official duties as police officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

6.  Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

7.  Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene, and while Mr. Duncan was on the ground, he was repeatedly struck in the head, face and back area by Officer Price and the other officers on the scene.

8

8. Mr. Duncan was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

9. Neither defendant Price nor the other officers ever informed Mr. Duncan why he was being detained.

10. Defendant Randall Price did not have an arrest warrant for Mr. Duncan, did not have probable cause or a reasonable suspicion to believe that Mr. Duncan had committed, was committing or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Duncan.

11. The aforesaid force used by Officer Price was excessive and unreasonable under the circumstances.

12. As a direct and proximate result of the excessive and unreasonable force used by defendant Randall Price, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

13. As a direct and proximate result of the excessive and unreasonable force used by defendant Randall Price, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

14. The conduct of the defendant Randall Price deprived plaintiff Duncan of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against

9

unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

15. The acts, conduct, and behavior of defendant Randall Price were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Randall Price, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT IV - MARION DUNCAN V. RANDALL PRICE

### (BATTERY)

1. Plaintiff Marion Duncan is a resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Randall Price is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a

10

municipal corporation and governmental subdivision of the State of Illinois.

3. On or about May 23, 1999, defendant Melvin Brown, acting in his official capacity as a patrol officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

4. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

5. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene.

6. While Mr. Duncan was on the ground, Officer Randall Price, without lawful justification and against the will of Marion Duncan, intentionally struck Mr. Duncan in the head, face and body area.

7. The aforesaid force used by Officer Price was excessive and unreasonable under the circumstances.

8. As a direct and proximate result of foregoing unlawful physical contact used by defendant Randall Price, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

9. As a direct and proximate result of the foregoing unlawful physical contact used by defendant Randall Price, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

11

10. The acts, conduct, and behavior of defendant Randall Price were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Randall Price, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT V - MARION DUNCAN V. MARK RUMMEL

## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Marion Duncan is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Mark Rummel is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4. Each and all of the acts of defendant Mark Rummel alleged herein were done by defendant Mark Rummel, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County

12

of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5. On or about May 23, 1999, defendant Melvin Brown, in relation to his official duties as police officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

6. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

7. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene, and while Mr. Duncan was on the ground, he was repeatedly struck in the head, face and back area by Officer Rummel and the other officers on the scene.

8. Mr. Duncan was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

9. Neither defendant Rummel nor the other officers ever informed Mr. Duncan why he was being detained.

10. Defendant Mark Rummel did not have an arrest warrant for Mr. Duncan, did not have probable cause or a reasonable suspicion to believe that Mr. Duncan had committed, was committing or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Duncan.

11. The aforesaid force used by Officer Rummel was excessive and unreasonable under the circumstances.

13

12. As a direct and proximate result of the excessive and unreasonable force used by defendant Mark Rummel, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

13. As a direct and proximate result of the excessive and unreasonable force used by defendant Mark Rummel, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

14. The conduct of the defendant Mark Rummel deprived plaintiff Duncan of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

   A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

   B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

   C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

15. The acts, conduct, and behavior of defendant Mark Rummel were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff

14

Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Mark Rummel, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT VI - MARION DUNCAN V. MARK RUMMEL

### (BATTERY)

1. Plaintiff Marion Duncan is a resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Mark Rummel is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. On or about May 23, 1999, defendant Melvin Brown, acting in his official capacity as a patrol officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

4. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

5. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene.

6. While Mr. Duncan was on the ground, Officer Mark Rummel, without lawful

justification and against the will of Marion Duncan, intentionally struck Mr. Duncan in the head, face and body area.

7. The aforesaid force used by Officer Rummel was excessive and unreasonable under the circumstances.

8. As a direct and proximate result of foregoing unlawful physical contact used by defendant Mark Rummel, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

9. As a direct and proximate result of the foregoing unlawful physical contact used by defendant Mark Rummel, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

10. The acts, conduct, and behavior of defendant Mark Rummel were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Mark Rummel, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT VII - MARION DUNCAN V. KURTIS NASH

## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Marion Duncan is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Kurtis Nash is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4. Each and all of the acts of defendant Kurtis Nash alleged herein were done by defendant Kurtis Nash, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5. On or about May 23, 1999, defendant Melvin Brown, in relation to his official duties as police officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

6. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

7. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene, and while Mr. Duncan was on the ground, he was repeatedly struck in the head, face and back area by Officer Nash and the other officers on the scene.

8. Mr. Duncan was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

9. Neither defendant Nash nor the other officers ever informed Mr. Duncan why he was being detained.

10. Defendant Kurtis Nash did not have an arrest warrant for Mr. Duncan, did not have probable cause or a reasonable suspicion to believe that Mr. Duncan had committed, was committing or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Duncan.

11. The aforesaid force used by Officer Nash was excessive and unreasonable under the circumstances.

12. As a direct and proximate result of the excessive and unreasonable force used by defendant Kurtis Nash, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

13. As a direct and proximate result of the excessive and unreasonable force used by defendant Curtis Nash, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

14.  The conduct of the defendant Kurtis Nash deprived plaintiff Duncan of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A.  The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B.  The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

C.  The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

15.  The acts, conduct, and behavior of defendant Kurtis Nash were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Kurtis Nash, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT VIII - MARION DUNCAN V. KURTIS NASH

### (BATTERY)

1. Plaintiff Marion Duncan is a resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Kurtis Nash is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. On or about May 23, 1999, defendant Melvin Brown, acting in his official capacity as a patrol officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

4. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

5. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene.

6. While Mr. Duncan was on the ground, Officer Kurtis Nash, without lawful justification and against the will of Marion Duncan, intentionally struck Mr. Duncan in the head, face and body area.

7. The aforesaid force used by Officer Nash was excessive and unreasonable under the circumstances.

8. As a direct and proximate result of foregoing unlawful physical contact used by defendant Kurtis Nash, Mr. Duncan suffered injuries to his body, including, but not limited

to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

9. As a direct and proximate result of the foregoing unlawful physical contact used by defendant Kurtis Nash, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

10. The acts, conduct, and behavior of defendant Kurtis Nash were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Kurtis Nash, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT IX - MARION DUNCAN V. GLEN FORD
## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Marion Duncan is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Glen Ford is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the

21

provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4. Each and all of the acts of defendant Glen Ford alleged herein were done by defendant Glen Ford, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5. On or about May 23, 1999, defendant Melvin Brown, in relation to his official duties as police officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

6. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

7. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene, and while Mr. Duncan was on the ground, he was repeatedly struck in the head, face and back area by Defendant Glen Ford and the other officers on the scene.

8. Mr. Duncan was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

9. Neither defendant Ford nor the other officers ever informed Mr. Duncan why he was being detained.

22

10. Defendant Ford did not have an arrest warrant for Mr. Duncan, did not have probable cause or a reasonable suspicion to believe that Mr. Duncan had committed, was committing or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Duncan.

11. The aforesaid force used by Defendant Glen Ford was excessive and unreasonable under the circumstances.

12. As a direct and proximate result of the excessive and unreasonable force used by defendant Glen Ford, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

13. As a direct and proximate result of the excessive and unreasonable force used by defendant Glen Ford, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

14. The conduct of the defendant Glen Ford deprived plaintiff Duncan of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to

the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

15. The acts, conduct, and behavior of defendant Glen Ford were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Glen Ford, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT X - MARION DUNCAN V. GLEN FORD

### (BATTERY)

1. Plaintiff Marion Duncan is a resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Glen Ford is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. On or about May 23, 1999, defendant Melvin Brown, acting in his official capacity as a patrol officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

4. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

5. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene.

6. While Mr. Duncan was on the ground, Defendant Glen Ford, without lawful justification and against the will of Marion Duncan, intentionally struck Mr. Duncan in the head, face and body area.

7. The aforesaid force used by defendant Glen Ford was excessive and unreasonable under the circumstances.

8. As a direct and proximate result of foregoing unlawful physical contact used by defendant Glen Ford, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

9. As a direct and proximate result of the foregoing unlawful physical contact used by defendant Glen Ford, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

10. The acts, conduct, and behavior of defendant Glen Ford were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against

Glen Ford, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT XI - MARION DUNCAN V. BRIAN AMILCAR

### (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Marion Duncan is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Brian Amilcar is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4. Each and all of the acts of defendant Brian Amilcar alleged herein were done by defendant Brian Amilcar, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5. On or about May 23, 1999, defendant Melvin Brown, in relation to his official duties as police officer for the City of North Chicago, performed a traffic stop on a vehicle

driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

6. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

7. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene, and while Mr. Duncan was on the ground, he was repeatedly struck in the head, face and back area by Defendant Brian Amilcar and the other officers on the scene.

8. Mr. Duncan was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

9. Neither defendant Amilcar nor the other officers ever informed Mr. Duncan why he was being detained.

10. Defendant Amilcar did not have an arrest warrant for Mr. Duncan, did not have probable cause or a reasonable suspicion to believe that Mr. Duncan had committed, was committing or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Duncan.

11. The aforesaid force used by Defendant Brian Amilcar was excessive and unreasonable under the circumstances.

12. As a direct and proximate result of the excessive and unreasonable force used by defendant Brian Amilcar, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

13. As a direct and proximate result of the excessive and unreasonable force used by defendant Brian Amilcar, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

14. The conduct of the defendant Brian Amilcar deprived plaintiff Duncan of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

     A.  The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

     B.  The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

     C.  The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

15. The acts, conduct, and behavior of defendant Brian Amilcar were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Brian Amilcar, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with

the costs of this action and any other relief this court deems just and proper.

## COUNT XII - MARION DUNCAN V. BRIAN AMILCAR

## (BATTERY)

1.  Plaintiff Marion Duncan is a resident of the City of North Chicago, County of Lake, State of Illinois.

2.  Defendant Brian Amilcar is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3.  On or about May 23, 1999, defendant Melvin Brown, acting in his official capacity as a patrol officer for the City of North Chicago, performed a traffic stop on a vehicle driven by plaintiff Marion Duncan on Grove street, in the City of North Chicago, Illinois.

4.  Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

5.  Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene.

6.  While Mr. Duncan was on the ground, Defendant Amilcar, without lawful justification and against the will of Marion Duncan, intentionally struck Mr. Duncan in the head, face and body area.

7.  The aforesaid force used by defendant Brian Amilcar was excessive and unreasonable under the circumstances.

29

8.  As a direct and proximate result of foregoing unlawful physical contact used by defendant Brian Amilcar, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

9.  As a direct and proximate result of the foregoing unlawful physical contact used by defendant Brian Amilcar, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

10.  The acts, conduct, and behavior of defendant Brian Amilcar were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Brian Amilcar, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT XIII - MARION DUNCAN V. CITY OF NORTH CHICAGO
## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1.  Plaintiff Marion Duncan is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2.  Defendant City of North Chicago is now, and at all relevant times was, a municipal corporation and governmental subdivision of the State of Illinois.

30

3.  This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4.  Each and all of the acts of defendant police officers alleged herein were done by defendant police officers, and each of them, not as individuals, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5.  On or about May 23, 1999, at approximately 10:15 p.m., plaintiff Marion Duncan was lawfully operating a 1988 red Buick Regal, traveling northbound on Grove street, in the City of North Chicago, Illinois.

6.  At approximately the same date, time, and location, defendant Melvin Brown , pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

7.  Defendant Brown then signaled plaintiff Duncan to stop his vehicle by activating his overhead lights, which plaintiff did in the 2000 block of Grove, in response to the evident authority of defendant Brown.

8.  Plaintiff Duncan, after pulling his vehicle to the side of the road, began to exit his vehicle.

9.  Defendant Brown, who at all times was wearing official uniform, insignia, and

31

badge of the North Chicago Police Department, commanded Mr. Duncan to return to his vehicle.

10. Plaintiff Duncan immediately complied with this request and sat in the front seat of his vehicle.

11. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

12. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene, and while Mr. Duncan was on the ground, he was repeatedly struck in the head, face and back area by the North Chicago Police Officers on the scene.

13. Mr. Duncan was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

14. Neither defendant Brown nor the other officers ever informed Mr. Duncan why he was being detained.

15. The North Chicago Police department did not have an arrest warrant for Mr. Duncan, did not have probable cause or a reasonable suspicion to believe that Mr. Duncan had committed, was committing or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Duncan.

16. The aforesaid force used by the defendant police officers was excessive and unreasonable under the circumstances.

17. As a direct and proximate result of the excessive and unreasonable force used by defendant police officers, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

18. As a direct and proximate result of the excessive and unreasonable force used by defendant police officers, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

19. The conduct of the defendant police officers deprived plaintiff Duncan of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

20. At the time of this occurrence, it was the policy, custom and usage of the North Chicago Police Department and the City of North Chicago to use such excessive and

unreasonable force in situations involving detention and/or arrest of individuals.

21. At the time of this occurrence, Officers Brown, Price, Rummel, Nash, Ford, and Amilcar were acting under the authority of Elisha Irvin, Jr., Chief of Police of the North Chicago Police Department, and Chief Irvin at that time knew or should have known of the policy, custom, and usage of his officers using excessive and unreasonable force in arrest and detention situations.

22. The City of North Chicago, after becoming aware of the policy, custom, and usage of North Chicago police officers using excessive and unreasonable force in arrest and detention situations, failed to investigate instances of such conduct, failed to discipline officers engaged in such conduct, failed to adequately train its officers not to employ such methods in detaining and arresting individuals, and failed to implement policies sufficient to safeguard against such unconstitutional behavior in the future.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against The City of North Chicago, a municipal corporation, for compensatory punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT XIV - MARION DUNCAN V. ELISHA IRVIN, JR.

## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Marion Duncan is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Elisha Irvin, Jr., is now, and at all relevant times was, the duly

appointed Chief of Police of the North Chicago Police Department.

3. The City of North Chicago is now, and at all relevant times was, a municipal corporation and governmental subdivision of the State of Illinois.

4. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

5. Each and all of the acts of defendant police officers alleged herein were done by defendant police officers, and each of them, not as individuals, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

6. On or about May 23, 1999, at approximately 10:15 p.m., plaintiff Marion Duncan was lawfully operating a 1988 red Buick Regal, traveling northbound on Grove street, in the City of North Chicago, Illinois.

7. At approximately the same date, time, and location, defendant Melvin Brown, pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

8. Defendant Brown then signaled plaintiff Duncan to stop his vehicle by activating his overhead lights, which plaintiff did in the 2000 block of Grove, in response to the evident authority of defendant Brown.

35

9. Plaintiff Duncan, after pulling his vehicle to the side of the road, began to exit his vehicle.

10. Defendant Brown, who at all times was wearing official uniform, insignia, and badge of the North Chicago Police Department, commanded Mr. Duncan to return to his vehicle.

11. Plaintiff Duncan immediately complied with this request and sat in the front seat of his vehicle.

12. Defendant Brown then approached Mr. Duncan while he was seated in his vehicle, asked him to get out of his vehicle, grabbed his body with his hands, and kicked him in the legs causing Mr. Duncan to fall to the ground.

13. Defendant Brown then called for more officers to come to the scene. Defendants Price, Rummel, Nash, Ford, and Amilcar arrived on the scene, and while Mr. Duncan was on the ground, he was repeatedly struck in the head, face and back area by the North Chicago Police Officers on the scene.

14. Mr. Duncan was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

15. Neither defendant Brown nor the other officers ever informed Mr. Duncan why he was being detained.

16. The North Chicago Police department did not have an arrest warrant for Mr. Duncan, did not have probable cause or a reasonable suspicion to believe that Mr. Duncan had committed, was committing or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr.

Duncan.

17. The aforesaid force used by the defendant police officers was excessive and unreasonable under the circumstances.

18. As a direct and proximate result of the excessive and unreasonable force used by defendant police officers, Mr. Duncan suffered injuries to his body, including, but not limited to, facial lacerations, facial fractures, facial contusions, other head and neck injuries, and contusions to his body.

19. As a direct and proximate result of the excessive and unreasonable force used by defendant police officers, plaintiff Duncan was unable to attend to his duties as electrician for Cherry Electric for a period of time, and sustained damages for loss of earnings during that time.

20. The conduct of the defendant police officers deprived plaintiff Duncan of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the

Fourteenth Amendment to the Constitution of the United States.

21. At the time of this occurrence, it was the policy, custom and usage of the North Chicago Police Department and the City of North Chicago to use such excessive and unreasonable force in situations involving detention and/or arrest of individuals.

22. At the time of this occurrence, Officers Brown, Price, Rummel, Nash, Ford, and Amilcar were acting under the authority of Elisha Irvin, Jr., Chief of Police of the North Chicago Police Department, and Chief Irvin at that time knew or should have known of the policy, custom, and usage of his officers using excessive and unreasonable force in arrest and detention situations.

23. Chief of Police Elisha Irvin, Jr., after becoming aware of the policy, custom, and usage of North Chicago police officers using excessive and unreasonable force in arrest and detention situations, failed to investigate instances of such conduct, failed to discipline officers engaged in such conduct, failed to adequately train its officers not to employ such methods in detaining and arresting individuals, and failed to implement policies sufficient to safeguard against such unconstitutional behavior in the future.

24. The acts, conduct, and behavior of the defendant police officers and Chief of Police Elisha Irvin, Jr. were performed intentionally, maliciously, and with reckless disregard for the rights of plaintiff Duncan, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Marion Duncan, individually, hereby demands judgement against Elisha Irvin Jr., individually and in his official capacity of Chief of Police for the North Chicago Police Department, for compensatory and punitive damages in excess of

38

$50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT XV - AARON WILLIAMS V. CASIMIR RINCON

## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Aaron Williams is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Casimir Rincon is now, and at all relevant times was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

5. Each and all of the acts of defendant Casimir Rincon alleged herein were done by defendant Casimir Rincon, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

6. On or about February 24, 1999, at approximately 2:00 a.m., plaintiff Aaron Williams was lawfully operating a 1984 silver Toyota in the area of Kennedy Drive and Barrett Court in North Chicago, Illinois.

7. Plaintiff Williams pulled the vehicle into a parking lot off of Barrett Court and parked the vehicle in a parking space in that lot.

8. At approximately the same date, time and location, defendant Rincon, pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police patrol vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

9. Officer Rincon pulled his vehicle in the vicinity of Plaintiff William's vehicle that was parked in the parking lot off of Barrett Court.

10. Plaintiff Williams got out of the car and proceeded on foot towards his residence, while Officers Rincon, Wade and Villasenor chased Mr. Williams on foot.

11. As Plaintiff Williams was running, Officer Rincon tackled Mr. Williams to the ground, and Officer Rincon, along with officers Gerard Wade and Villasenor, then struck Mr. Williams in the head, face, shoulder, and chest area

12. Mr. Williams was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

13. Defendant Rincon never informed Mr. Williams why he was being pursued or detained.

14. Defendant Rincon did not have an arrest warrant for Mr. Williams, did not have probable cause or a reasonable suspicion to believe that Mr. Williams had committed, was committing, or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Williams.

15. The aforesaid force used by Officer Rincon was excessive and unreasonable

under the circumstances.

16. As a direct and proximate result of the excessive and unreasonable force used by defendant Rincon, Mr. Williams suffered injuries to his body, including, but not limited to, a fractured scapula, contusions and lacerations to his face, blunt head trauma, and contusions to his rib area.

17. The foregoing conduct of defendant Rincon deprived plaintiffs of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

18. The acts, conduct, and behavior of defendant Casimir Rincon, were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Williams, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Aaron Williams, individually, hereby demands judgement against Casimir Rincon, individually and in his official capacity as a police officer for the City of

North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this Court deems just and proper.

## COUNT XVI - AARON WILLIAMS V. CASIMIR RINCON

### (BATTERY)

1. Plaintiff Aaron Williams is a resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Casimir Rincon is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. On or about February 24, 1999, plaintiff Aaron Williams was lawfully operating a 1984 silver Toyota in the area of Kennedy Drive and Barrett Court in North Chicago, Illinois.

4. Plaintiff Williams pulled the vehicle into a parking lot off of Barrett Court and parked the vehicle in a parking space in that lot.

5. At approximately the same date, time and location, defendant Rincon, pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police patrol vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

6. Officer Rincon pulled his vehicle in the vicinity of Plaintiff William's vehicle that was parked in the parking lot off of Barrett Court.

7. Plaintiff Williams got out of the car and proceeded on foot towards his residence,

while Officers Rincon, Wade and Villasenor chased Mr. Williams on foot.

8.   As Plaintiff Williams was running, Officer Rincon, without lawful justification, and against the will of Aaron Williams, intentionally tackled Mr. Williams to the ground, and Officer Rincon, along with officers Gerard Wade and Villasenor, without lawful justification and against the will of Aaron Williams, intentionally struck Mr. Williams in the head, face, shoulder, and chest area.

9.   The aforesaid force used by Officer Rincon was excessive and unreasonable under the circumstances.

10.   As a direct and proximate result of the foregoing unlawful physical contact used by defendant Rincon, Mr. Williams suffered injuries to his body, including, but not limited to, a fractured scapula, contusions and lacerations to his face, blunt head trauma, and contusions to his rib area.

11.   The acts, conduct, and behavior of defendant Casimir Rincon, were performed intentionally, maliciously, and with reckless or callous disregard of the rights of plaintiff Williams, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Aaron Williams, individually, hereby demands judgement against Casimir Rincon, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT XVII - AARON WILLIAMS V. NAZARRIO VILLASENOR

## (VIOLATION OF TITLE 42 SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Aaron Williams is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Nazzarion Villasenor is now, and at all relevant times was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4. Each and all of the acts of defendant Nazarrio Villasenor alleged herein were done by defendant Nazzarion Villasenor, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5. On or about February 24, 1999, at approximately 2:00 a.m., plaintiff Aaron Williams was lawfully operating a 1984 silver Toyota in the area of Kennedy Drive and Barrett Court in North Chicago, Illinois.

6. Plaintiff Williams pulled the vehicle into a parking lot off of Barrett Court and parked the vehicle in a parking space in that lot.

7. At approximately the same date, time and location, defendant Villasenor,

44

pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police patrol vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

8. Officer Villasenor pulled his vehicle in the vicinity of Plaintiff William's vehicle that was parked in the parking lot off of Barrett Court.

9. Plaintiff Williams got out of the car and proceeded on foot towards his residence, while Officers Rincon, Wade and Villasenor chased Mr. Williams on foot.

10. As Plaintiff Williams was running, Officer Rincon tackled Mr. Williams to the ground, and Officer Villasenor, along with officers Gerard Wade and Rincon, then struck Mr. Williams in the head, face, shoulder, and chest area.

11. Mr. Williams was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

12. Defendant Villasenor never informed Mr. Williams why he was being pursued or detained.

13. Defendant Villasenor did not have an arrest warrant for Mr. Williams, did not have probable cause or a reasonable suspicion to believe that Mr. Williams had committed, was committing, or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Williams.

14. The aforesaid force used by Officer Villasenor was excessive and unreasonable under the circumstances.

15. As a direct and proximate result of the excessive and unreasonable force used by defendant Villasenor, Mr. Williams suffered injuries to his body, including, but not

limited to, a fractured scapula, contusions and lacerations to his face, blunt head trauma, and contusions to his rib area.

16. The foregoing conduct of defendant Villasenor deprived plaintiffs of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

17. The acts, conduct, and behavior of defendant Villasenor were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Williams, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Aaron Williams, individually, hereby demands judgement against Nazzario Villasenor, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this Court deems just and proper.

46

## COUNT XVIII - AARON WILLIAMS V. NAZZARIO VILLASENOR

### (BATTERY)

1.  Plaintiff Aaron Williams is a resident of the City of North Chicago, County of Lake, State of Illinois.

2.  Defendant Nazzario Villasenor is now, and at all times material to this action was, a duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3.  On or about February 24, 1999, plaintiff Aaron Williams was lawfully operating a 1984 silver Toyota in the area of Kennedy Drive and Barrett Court in North Chicago, Illinois.

4.  Plaintiff Williams pulled the vehicle into a parking lot off of Barrett Court and parked the vehicle in a parking space in that lot.

5.  At approximately the same date, time and location, defendant Villasenor, pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police patrol vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

6.  Officer Villasenor pulled his vehicle in the vicinity of Plaintiff William's vehicle that was parked in the parking lot off of Barrett Court.

7.  Plaintiff Williams got out of the car and proceeded on foot towards his residence, while Officers Rincon, Wade and Villasenor chased Mr. Williams on foot.

8.  As Plaintiff Williams was running, Officer Rincon, tackled Mr. Williams to the ground, and Officer Villasenor, along with officers Gerard Wade and Rincon, without lawful

justification and against the will of Aaron Williams, intentionally struck Mr. Williams in the head, face, shoulder, and chest area.

9. The aforesaid force used by Officer Villasenor was excessive and unreasonable under the circumstances.

10. As a direct and proximate result of the foregoing unlawful physical contact used by defendant Villasenor, Mr. Williams suffered injuries to his body, including, but not limited to, a fractured scapula, contusions and lacerations to his face, blunt head trauma, and contusions to his rib area.

11. The acts, conduct, and behavior of defendant Villasenor were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Williams, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Aaron Williams, individually, hereby demands judgement against Nazzario Villasenor, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and puniitve damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## XIX - AARON WILLIAMS V. GERARD WADE

## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Aaron Williams is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Gerard Wade is now, and at all relevant times was, a duly appointed,

48

employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4. Each and all of the acts of defendant Gerard Wade alleged herein were done by defendant Gerard Wade, not as an individual, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5. On or about February 24, 1999, at approximately 2:00 a.m., plaintiff Aaron Williams was lawfully operating a 1984 silver Toyota in the area of Kennedy Drive and Barrett Court in North Chicago, Illinois.

6. Plaintiff Williams pulled the vehicle into a parking lot off of Barrett Court and parked the vehicle in a parking space in that lot.

7. At approximately the same date, time and location, defendant Gerard Wade, pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police patrol vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

8. Officer Wade pulled his vehicle in the vicinity of Plaintiff William's vehicle that was parked in the parking lot off of Barrett Court.

49

9. Plaintiff Williams got out of the car and proceeded on foot towards his residence, while Officers Rincon, Wade and Villasenor chased Mr. Williams on foot.

10. As Plaintiff Williams was running, Officer Rincon tackled Mr. Williams to the ground, and Officer Gerard Wade, along with officers Villasenor and Rincon, then struck Mr. Williams in the head, face, shoulder, and chest area.

11. Mr. Williams was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

12. Defendant Gerard Wade never informed Mr. Williams why he was being pursued or detained.

13. Defendant Gerard Wade did not have an arrest warrant for Mr. Williams, did not have probable cause or a reasonable suspicion to believe that Mr. Williams had committed, was committing, or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Williams.

14. The aforesaid force used by Officer Gerard Wade was excessive and unreasonable under the circumstances.

15. As a direct and proximate result of the excessive and unreasonable force used by defendant Gerard Wade, Mr. Williams suffered injuries to his body, including, but not limited to, a fractured scapula, contusions and lacerations to his face, blunt head trauma, and contusions to his rib area.

16. The foregoing conduct of defendant Gerard Wade deprived plaintiffs of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

50

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

17. The acts, conduct, and behavior of defendant Gerard Wade were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Williams, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Aaron Williams, individually, hereby demands judgement against Gerard Wade, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this Court deems just and proper.

## COUNT XX - AARON WILLIAMS V. GERARD WADE

### (BATTERY)

1. Plaintiff Aaron Williams is a resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Gerard Wade is now, and at all times material to this action was, a

51

duly appointed, employed, and acting police officer of the City of North Chicago, a municipal corporation and governmental subdivision of the State of Illinois.

3. On or about February 24, 1999, plaintiff Aaron Williams was lawfully operating a 1984 silver Toyota in the area of Kennedy Drive and Barrett Court in North Chicago, Illinois.

4. Plaintiff Williams pulled the vehicle into a parking lot off of Barrett Court and parked the vehicle in a parking space in that lot.

5. At approximately the same date, time and location, defendant Gerard Wade, pursuant to his regular and official employment as a patrol officer for the City of North Chicago, was operating a marked police patrol vehicle owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

6. Officer Gerard Wade pulled his vehicle in the vicinity of Plaintiff William's vehicle that was parked in the parking lot off of Barrett Court.

7. Plaintiff Williams got out of the car and proceeded on foot towards his residence, while Officers Rincon, Wade and Villasenor chased Mr. Williams on foot.

8. As Plaintiff Williams was running, Officer Rincon tackled Mr. Williams to the ground, and Officer Gerard Wade, along with officers Villasenor and Rincon, without lawful justification and against the will of Aaron Williams, intentionally struck Mr. Williams in the head, face, shoulder, and chest area.

9. The aforesaid force used by Officer Gerard Wade was excessive and unreasonable under the circumstances.

10. As a direct and proximate result of the foregoing unlawful physical contact used

52

by defendant Gerard Wade, Mr. Williams suffered injuries to his body, including, but not limited to, a fractured scapula, contusions and lacerations to his face, blunt head trauma, and contusions to his rib area.

11. The acts, conduct, and behavior of defendant Gerard Wade were performed intentionally, maliciously, and with reckless or callous disregard for the rights of plaintiff Williams, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Aaron Williams, individually, hereby demands judgement against Gerard Wade, individually and in his official capacity as a police officer for the City of North Chicago, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this court deems just and proper.

## COUNT XXI - AARON WILLIAMS V. CITY OF NORTH CHICAGO
## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Aaron Williams is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant City of North Chicago is now, and at all relevant times was, a municipal corporation and governmental subdivision of the State of Illinois.

3. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

4. Each and all of the acts of defendant police officers alleged herein were done

by defendant police officers, and each of them, not as individuals, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

5. On or about February 24, 1999, at approximately 2:00 a.m., plaintiff Aaron Williams was lawfully operating a 1984 silver Toyota in the area of Kennedy Drive and Barrett Court in North Chicago, Illinois.

6. Plaintiff Williams pulled the vehicle into a parking lot off of Barrett Court and parked the vehicle in a parking space in that lot.

7. At approximately the same date, time and location, defendants Gerard Wade, Nazzario Villasenor, and Casimir Rincon, pursuant to their regular and official employment as a patrol officer for the City of North Chicago, were operating marked police patrol vehicles owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

8. Officers Wade, Rincon, and Villasenor pulled their vehicle in the vicinity of Plaintiff William's vehicle that was parked in the parking lot off of Barrett Court.

9. Plaintiff Williams got out of the car and proceeded on foot towards his residence, while Officers Rincon, Wade and Villasenor chased Mr. Williams on foot.

10. As Plaintiff Williams was running, Officer Rincon tackled Mr. Williams to the ground, and Officer Gerard Wade, along with officers Villasenor and Rincon, then struck Mr. Williams in the head, face, shoulder, and chest area.

11. Mr. Williams was then placed into handcuffs, taken into custody of the police,

and transported to the North Chicago Police Department.

12. Defendants Gerard Wade, Villasenor, and Rincon never informed Mr. Williams why he was being pursued or detained.

13. Defendants Gerard Wade, Villasenor, and Rincon did not have an arrest warrant for Mr. Williams, did not have probable cause or a reasonable suspicion to believe that Mr. Williams had committed, was committing, or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Williams.

14. The aforesaid force used by Officers Gerard Wade, Villasenor, and Rincon was excessive and unreasonable under the circumstances.

15. As a direct and proximate result of the excessive and unreasonable force used by defendants Gerard Wade, Villasenor, and Rincon, Mr. Williams suffered injuries to his body, including, but not limited to, a fractured scapula, contusions and lacerations to his face, blunt head trauma, and contusions to his rib area.

16. The foregoing conduct of defendants Gerard Wade, Villasenor, and Rincon deprived plaintiffs of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to

the Constitution of the United States, and;

  C.  The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

17. At the time of this occurrence, it was the policy, custom and usage of the North Chicago Police Department and the City of North Chicago to use such excessive and unreasonable force in situations involving detention and/or arrest of individuals.

18. At the time of this occurrence, Officers Rincon, Wade and Villasenor were acting under the authority of Elisha Irvin, Chief of Police of the North Chicago Police Department, and Chief Irvin at that time knew or should have known of the policy, custom, and usage of his officers using excessive and unreasonable force in arrest and detention situations.

19. The City of North Chicago, after becoming aware of the policy, custom, and usage of North Chicago police officers using excessive and unreasonable force in arrest and detention situations, failed to investigate instances of such conduct, failed to discipline Officers engaged in such conduct, failed to adequately train its officers not to employ such methods in detaining and arresting individuals, and failed to implement policies sufficient to safeguard against such unconstitutional behavior in the future.

WHEREFORE, Aaron Williams, individually, hereby demands judgement against The City of North Chicago, a municipal corporation, for compensatory damages in excess of $50,000.00, together with the costs of this action and any other relief this Court deems just and proper.

## COUNT XXIV - AARON WILLIAMS V. ELISHA IRVIN, JR.

## (VIOLATION OF TITLE 42, SECTION 1983 OF THE UNITED STATES CODE)

1. Plaintiff Aaron Williams is an African-American male, citizen of the United States of America and resident of the City of North Chicago, County of Lake, State of Illinois.

2. Defendant Elisha Irvin, Jr. is now, and at all relevant times was, the duly appointed Chief of Police of the North Chicago Police Department

3. The City of North Chicago is now, and at all relevant times was, a municipal corporation and governmental subdivision of the State of Illinois.

4. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

5. Each and all of the acts of defendant police officers alleged herein were done by defendant police officers, and each of them, not as individuals, but under the color and pretense of the Statutes, ordinances, regulations, customs, and usages of the State of Illinois, the County of Lake, and the City of North Chicago, and under authority of their office as police officers for the City of North Chicago.

6. On or about February 24, 1999, at approximately 2:00 a.m., plaintiff Aaron Williams was lawfully operating a 1984 silver Toyota in the area of Kennedy Drive and Barrett Court in North Chicago, Illinois.

7. Plaintiff Williams pulled the vehicle into a parking lot off of Barrett Court and parked the vehicle in a parking space in that lot.

8. At approximately the same date, time and location, defendants Gerard Wade, Nazzario Villasenor, and Casimir Rincon, pursuant to their regular and official employment as a patrol officer for the City of North Chicago, were operating marked police patrol vehicles owned and maintained by the City of North Chicago for the use and benefit of the North Chicago Police Department.

9. Officers Wade, Rincon, and Villasenor pulled their vehicle in the vicinity of Plaintiff William's vehicle that was parked in the parking lot off of Barrett Court.

10. Plaintiff Williams got out of the car and proceeded on foot towards his residence, while Officers Rincon, Wade and Villasenor chased Mr. Williams on foot.

11. As Plaintiff Williams was running, Officer Rincon tackled Mr. Williams to the ground, and Officer Gerard Wade, along with officers Villasenor and Rincon, then struck Mr. Williams in the head, face, shoulder, and chest area.

12. Mr. Williams was then placed into handcuffs, taken into custody of the police, and transported to the North Chicago Police Department.

13. Defendants Gerard Wade, Villasenor, and Rincon never informed Mr. Williams why he was being pursued or detained.

14. Defendants Gerard Wade, Villasenor, and Rincon did not have an arrest warrant for Mr. Williams, did not have probable cause or a reasonable suspicion to believe that Mr. Williams had committed, was committing, or was about to commit any crimes or traffic violations, and did not otherwise have probable cause to stop, detain, and arrest Mr. Williams.

15. The aforesaid force used by Officers Gerard Wade, Villasenor, and Rincon was

58

excessive and unreasonable under the circumstances.

16. As a direct and proximate result of the excessive and unreasonable force used by defendants Gerard Wade, Villasenor, and Rincon, Mr. Williams suffered injuries to his body, including, but not limited to, a fractured scapula, contusions and lacerations to his face, blunt head trauma, and contusions to his rib area.

17. The foregoing conduct of defendants Gerard Wade, Villasenor, and Rincon deprived plaintiffs of the following rights, privileges, and immunities secured to him by the Constitution of the United States of America:

A. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

B. The right of Plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States, and;

C. The right of Plaintiff not to be deprived of life, liberty or property without Due Process of Law, and the right to the equal protection of laws, secured by the Fourteenth Amendment to the Constitution of the United States.

18. At the time of this occurrence, it was the policy, custom and usage of the North Chicago Police Department and the City of North Chicago to use such excessive and unreasonable force in situations involving detention and/or arrest of individuals.

19. At the time of this occurrence, Officers Rincon, Wade and Villasenor were acting under the authority of Elisha Irvin, Chief of Police of the North Chicago Police

Department, and Chief Irvin at that time knew or should have known of the policy, custom, and usage of his officers using excessive and unreasonable force in arrest and detention situations.

20. Chief of Police Elisha Irvin, Jr., after becoming aware of the policy, custom, and usage of North Chicago police officers using excessive and unreasonable force in arrest and detention situations, failed to investigate instances of such conduct, failed to discipline Officers engaged in such conduct, failed to adequately train its officers not to employ such methods in detaining and arresting individuals, and failed to implement policies sufficient to safeguard against such unconstitutional behavior in the future.

21. The acts, conduct, and behavior of defendant Elisha Irvin, Jr. and defendants Wade, Rincon, and Villasenor, were performed, intentionally, maliciously, and with reckless or callous disregard of the rights of plaintiff Williams, by reason of which plaintiff is entitled to an award of punitive damages.

WHEREFORE, Aaron Williams, individually, hereby demands judgement against Elisha Irvin, Jr., individually and as Chief of Police of the North Chicago Police Department, for compensatory and punitive damages in excess of $50,000.00, together with the costs of this action and any other relief this Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Respectfully Submitted,

MORRISON & MORRISON, P.C.

By _____

Donald J. Morrison
Attorney for Plaintiffs

MORRISON & MORRISON P.C.
32 N. West Street
Waukegan, Illinois 60085
(847) 244-2660
ARDC #6225680

61

JS 44
(Rev. 11/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as requ~
by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the
of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MARION DUNCAN AND
AARON WILLIAMS

## DEFENDANTS

CITY OF NORTH CHICAGO ET AL

**00C 2293**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  LAKE
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**JUDGE LEINENWEBER**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

DONALD J. MORRISON
DONALD MORRISON
32 NORTH WEST STREET **MAGISTRATE JUDGE ROSEMOND**
WAUKEGAN, IL 60085

ATTORNEYS (IF KNOWN)  STEVEN M. PUISZIS
ROBERT SHANNON
MATTHEW E. CULBERTSON
222 N. LASALLE #300
CHICAGO, IL 60601

**DOCKETED**

**APR 1 4 2000**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINT
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT

| | PTF | DEF | | PTF | DE |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

Transferred from
☐ 5 another district
(specify)

☐ 6 Multidistrict
Litigation

Appeal to Distr
Judge from
☐ 7 Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | **SOCIAL SECURITY** |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) |
| ☐ 195 Contract Product Liability | | | | | ☐ 863 DWC/DIWW (405(g)) |
| | | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | | ☐ 871 IRS — Third Party 26 USC 7609 |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

Additional OTHER STATUTES entries:
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Just
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions
☐ 875 Customer Challenge 12 USC 3410

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 US SECTION 1983, EXCESSIVE FORCE IN VIOLATION OF 4TH AMENDMENT ALLEGATIONS

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☐ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____  DOCKET NUMBER _____

SIGNATURE OF ATTORNEY OF RECORD  COUNSEL FOR ONE OF THE DEFEND

4/13/00

**FOR OFFICE USE ONLY**

AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**00C 2293**

In the Matter of

Marion Duncan and Aaron WIlliams,
                Plaintiffs,     )
                           )
  v.                       )
The City of North Chicago, et al.,   )
                Defendants.    )

Case Number:
(Circuit Court of the Nineteenth
Juicial Circuit, Lake County,
Illinois Case No. 00 L 110)

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

**DOCKETED**

THE CITY OF NORTH CHICAGO and ELISHA IRVIN, JR., Chief of Police

JUDGE LEINENWEBER

APR 1 4 2000

MAGISTRATE JUDGE ROSEMOND

| (A) | (B) |
|---|---|
| **SIGNATURE** | **SIGNATURE** |
| **NAME** STEVEN M. PUISZIS | **NAME** ROBERT T. SHANNON |
| **FIRM** HINSHAW & CULBERTSON | **FIRM** HINSHAW & CULBERTSON |
| **STREET ADDRESS** 222 North LaSalle Street, Suite 300 | **STREET ADDRESS** 222 North LaSalle Street, Suite 300 |
| **CITY/STATE/ZIP** Chicago, Illinois 60601-1081 | **CITY/STATE/ZIP** Chicago, Illinois 60601-1081 |
| **TELEPHONE NUMBER** (312) 704-3000 | **TELEPHONE NUMBER** (312) 704-3000 |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 03125700 | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 06230254 |
| **MEMBER OF TRIAL BAR?** YES ☒ NO ☐ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☒ |
| **TRIAL ATTORNEY?** YES ☒ NO ☐ | **TRIAL ATTORNEY?** YES ☒ NO ☐ |
| | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| **SIGNATURE** | **SIGNATURE** |
| **NAME** | **NAME** |
| **FIRM** | **FIRM** |
| **STREET ADDRESS** | **STREET ADDRESS** |
| **CITY/STATE/ZIP** | **CITY/STATE/ZIP** |
| **TELEPHONE NUMBER** | **TELEPHONE NUMBER** |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ |
| **TRIAL ATTORNEY?** YES ☐ NO ☐ | **TRIAL ATTORNEY?** YES ☐ NO ☐ |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ |

/attyapp.wpd-